UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER KNOX,

    Plaintiff,

v.

DR. KELLY RHODES, *et al.*,

    Defendants.

Case No. 08-cv-277-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on, *inter alia*, Magistrate Judge Philip M. Frazier's Report and Recommendation ("R & R") (Doc. 201), wherein it is recommended that Defendant Dr. Gnu's Motion for Summary Judgment (Doc. 168) be granted and that Plaintiff Christopher Knox's claims against Dr. Gnu be dismissed with prejudice. Knox filed a timely Objection (Doc. 228) thereto.

For the following reasons, the Court, *inter alia*, **ADOPTS in part and REJECTS in part** Magistrate Judge Frazier's R & R.

## STANDARD OF REVIEW

After reviewing a report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Because Knox has

objected to the entire R & R, the Court will review its contents *de novo*.

## BACKGROUND

As a preliminary matter, the Court notes that Knox has filed an Appeal (Doc. 189) of Magistrate Judge Frazier's Order (Doc. 174) that denied Knox's Motion to Substitute Party (Doc. 171). In his motion, Knox simply asks that the name of "Dr. Lawrence Gnu" be changed to "Dr. Lawrence Ngu" to reflect the true name of said Defendant. While Magistrate Judge Frazier's decision to deny this request hardly represents clear error, the Court believes it best to have Dr. Ngu's correct name acknowledged in the record and used by the Court and parties throughout the remainder of this litigation. Accordingly, the Court **GRANTS** Knox's appeal and **DIRECTS** the Clerk of Court to **TERMINATE** Defendant Dr. Gnu from the docket sheet and **ADD** Defendant "Dr. Lawrence Ngu" to the docket sheet.

In terms of relevant factual background, it should be noted that Dr. Lawrence Ngu (hereinafter "Dr. Ngu") is a medical doctor that provides medical services to inmates at certain correctional centers in Illinois. Dr. Ngu serves Dixon Correctional Center ("Dixon"), but he has never served Tamms Correctional Center ("Tamms") in a medical capacity. Furthermore, because he is not a psychiatrist, Dr. Ngu has never served *any* correctional facility in a mental health capacity.

## ANALYSIS

Knox's primary objection to Magistrate Judge Frazier's R & R is that it misinterprets his claims against Dr. Ngu. Knox assures the Court that he is *not* claiming that Dr. Ngu denied him mental health treatment. Rather, Knox claims as follows: 1) Dr. Ngu was personally involved in transferring Knox from Dixon to Tamms and breeding the harsh environment there; 2) Dr. Ngu

was personally involved in allowing and approving the falsification of Knox's mental health records by the mental health staff at Tamms; and, 3) Dr. Ngu acted with deliberate indifference to Knox's serious medical needs on several occasions, including instances of self-mutilation at Dixon and the use of excessive force by the staff at Dixon.  Doc. 228, p. 4-6.  Knox's decision to raise several of these claims against Dr. Ngu in his objection is somewhat disingenuous, as neither party seriously discussed certain issues in their summary judgment briefing and some are not readily apparent from the Complaint (Doc. 1).  Given the number of claims and parties involved in this litigation, the Court admonishes Knox that he should make Defendants and the Court aware of any "at-risk" claims *before* Magistrate Judge Frazier submits an R & R.

With that said, the Court shall discuss each of Knox's claims in kind following a brief review of the relevant law.

**I.      Summary Judgment Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.     Section 1983

All of Knox's claims against Dr. Ngu are pursuant to 42 U.S.C. § 1983.  To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995); *accord Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). An official is personally involved if he knows about the unconstitutional conduct and facilitates, approves, condones, or deliberately turns a blind eye to it.  *Johnson*, 444 F.3d at 584**;**  *Gentry*, 65 F.3d at 561.  In other words, a supervisor must act either knowingly or with deliberate, reckless indifference to be liable under § 1983.  *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).  The doctrine of *respondeat superior* cannot be used to impose liability on a supervisor for a subordinate's unconstitutional actions.  *Id*.; *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

## III.     "Wrongful Transfer" Claim  and Hostile Prison Environment Claim

Knox first argues that Dr. Ngu was personally involved in his transfer from Dixon to Tamms and that Dr. Ngu encouraged the harsh psychological environment at Tamms.  Knox offers nothing but bald and vague assertions to support these claims.[1]  With respect to the claim

---

[1]Knox does aver "that [Dr. Ngu] was personally involved in approving and creating the harsh and [sic] psychological standards currently being used at Tamms . . . ." Doc. 198, p. 15-16.  The Court, however, finds that this conclusory allegation, which is likely *not* based on Knox's personal knowledge, is insufficient to thwart summary judgment. Fed. R. Civ. P. 56(c)(4).  *See Basith v. Cook Cnty.*, 241 F.3d 919, 928 (7th Cir. 2001) ("In any event, conclusory

of hostile environment, this lack of evidence is damning.  The affidavits of Dr. Ngu and Joe Ebbitt, risk manager of Wexford Health Services, Inc., state that Dr. Ngu has never provided medical or mental health services at Tamms.  Knox fails to articulate how Dr. Ngu fostered a harsh environment at Tamms when he did not provide health services there. The only plausible explanation for Knox's claim is that it is premised upon a theory of *respondeat superior*, which the above-referenced case law makes clear is generally unavailable in a § 1983 action.  As such, the Court will be dismissing the claim of hostile environment against Knox.

Unlike the hostile environment claim, where Dr. Ngu has put forth enough evidence for the Court to deem summary judgment appropriate, Dr. Ngu has not provided any legal argument or evidence that warrants dismissal of the "wrongful transfer" claim.  The fact that Dr. Ngu has never treated Knox or other patients at Tamms has no bearing on the extent of his involvement in Knox's transfer.  Rather, assuming *arguendo* that a claim for wrongful transfer is actionable and at issue and that Dr. Ngu was directly responsible for Knox's transfer from Dixon to Tamms, this claim may well prove meritorious.  In light of the lack of legal argument and factual development, as well as summary judgment's general deference to the non-movant, Knox's claim of wrongful transfer against Dr. Ngu shall continue.

---

allegations and self-serving affidavits, unsupported by the record will not preclude summary judgment."); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (citation and quotation marks omitted); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (deeming affidavits insufficient to defeat summary judgment because they were not based on personal knowledge).

### IV. Falsification of Mental Health Records Claim

Knox next argues that Dr. Ngu personally allowed and approved the falsification of Knox's mental health records by the mental health staff at Tamms. Here, again, the parties have left the Court with little to analyze due to a conspicuous lack of relevant evidence. The Court is mindful that Dr. Ngu is not a mental health physician and that he has never provided mental health services at a correctional facility; of course, this does not render him incapable of ordering the destruction of an inmate's medical files so long as he had the authority to do so.

The claim for falsification of Knox's mental health records is referenced in passing in the operative complaint. While it is not specifically directed at Dr. Ngu, the Court will allow a claim for such falsification to continue against Dr. Ngu due to an obvious lack of legal argument and factual development.

### V. Deliberate Indifference Claims

Finally, Knox argues that Dr. Ngu routinely acted with deliberate indifference to Knox's serious medical needs, namely in regards to his self-mutilation at Dixon and the use of excessive force by staff at Dixon.[2] Dr. Ngu has not put forth any evidence that warrants summary judgment on these claims; rather, in light of this lack of evidence, the Court may presume that Dr. Ngu insufficiently treated or denied medical treatment of Knox during his incarceration at Dixon. But, at this stage in the litigation, the Court cannot assess whether Dr. Ngu acted with deliberate indifference to Knox's self-mutilation and/or the use of excessive force by Dixon

---

[2] Because these two examples are all that Knox cites, the Court will construe them as the *only* claims of "direct" deliberate indifference against Dr. Ngu.

staff.[3]  These claims shall therefore continue.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS in part and REJECTS in part** Magistrate Judge Frazier's R & R (Doc. 201).  Specifically, the Court **ADOPTS** said R & R insofar as it **GRANTS** Dr. Ngu's Motion for Summary Judgment (Doc. 168) on Knox's hostile prison environment claim.  The Court **REJECTS** said R & R insofar as it recommends that the Court grant the remainder of Dr. Ngu's motion for summary judgment.  Rather, the Court **DENIES** Dr. Ngu's motion insofar as it seeks summary judgment on Knox's claims for "wrongful transfer," falsification of medical records, and deliberate indifference.  These shall represent Knox's *only* remaining claims against Dr. Ngu. And, again, the Court **GRANTS** Knox's Appeal (Doc. 189) and **DIRECTS** the Clerk of Court to **TERMINATE** Defendant Dr. Gnu from the docket sheet and **ADD** Defendant "Dr. Lawrence Ngu" to the docket sheet.

The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**
**DATED: January 25, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[3]Although, notably, Knox's contention that he was *denied* medical treatment at Dixon for his self-mutilation is somewhat circumvented by his own exhibit.  Namely, Knox submitted an assessment from Bloomington Radiology that indicates Dr. Ngu at least met with Knox about the insertion of a pen into his penis. *See* Doc. 198, p. 26.