**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHRISTOPHER KNOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: <u>3:08-cv-00277-JPG-PMF</u>** |
| | ) | |
| **KELLY RHODES,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

**FRAZIER, Magistrate Judge:**

Before the Court are:

1) Defendant Dr. Diana Dobier's motion for summary judgment and supporting memorandum of law (Doc. 290). Plaintiff Christopher Knox has filed a response (Doc. 348)[1] to Dr. Dobier's motion.

2) Defendant Lawrence Weiner's motion for summary judgment (Doc. 302) and supporting memorandum of law (Doc. 303).

3) Defendant Kelly Rhodes' motion for summary judgment (Doc. 305) and supporting memorandum of law (Doc. 306).

4) Plaintiff Christopher Knox's motion for summary judgment and supporting memorandum of law (Doc. 343).[2] Defendants Rhodes and Weiner have filed responses (Doc. 361) to the motion.

5) Plaintiff Knox's cross-motion for summary judgment and supporting memorandum of law (Doc. 349)[3] to Dr. Dobier's motion for summary judgment (Doc. 290). Defendant Dr. Dobier has filed a response (Doc. 387) to the motion.

6) Plaintiff Knox's cross-motion for summary judgment (Doc. 350) and supporting memorandum of law (Doc. 358)[4] to Defendants' motions for

---

[1] Plaintiff's (Doc. 348) response was untimely filed but has been considered by the Court in the interest of justice. A separately filed affidavit (Doc. 366 at 29-39) has not been considered by the Court in support of his response. *See* Doc. 364.

[2] Plaintiff's separately filed affidavit (Doc. 356) has been considered in support of his motion for summary judgment. *See* Doc. 353.

[3] A separately filed supporting affidavit (Doc. 366 at 11-28) has been considered by the Court. *See* Doc. 364.

[4] Plaintiff's supporting memorandum of law (Doc. 358) and a separately filed supporting affidavit (Doc. 366 at 1-10) were filed after the dispositive motions deadline but have been considered by the Court in the interest of justice. *See* Doc. 364.

1

summary judgment (Docs. 259, 302, 305, 309, 311, 313).  Defendants Rhodes and Weiner have filed a response (Doc. 388) to the motion.

For the following reasons, it is **RECOMMENDED** that:

1) Dr. Dobier's motion for summary judgment (Doc. 290) be **GRANTED**.
2) Defendant Weiner's motion for summary judgment (Doc. 302) be **GRANTED.**
3) Defendant Rhodes' motion for summary judgment (Doc. 305) be **GRANTED.**
4) Plaintiff Knox's motion for summary judgment (Doc. 343) be **DENIED.**
5) Plaintiff Knox's Cross motion for summary judgment (Doc. 349) be **DENIED.**
6) Plaintiff Knox's Cross motion for summary judgment (Doc. 350) be **DENIED.**

## <u>FACTS</u>

The facts of this case revolve around a series of prison transfers and medical treatment involving Christopher Knox, an IDOC inmate since 1994.  Prior to his transfer to Tamms, Knox was diagnosed with an Axis-I diagnosis of schizophrenia while he was an inmate at Stateville Correctional Center. *See* Doc. 358-1 at 7-10.  In 2005 and through early 2006, Knox was re-diagnosed with and maintained an Axis-I diagnosis of impulse control disorder and was prescribed various medications including Thorazine, Prozac, and Depakene. *See id.* at 11-15, 17-20; *see also* Doc. 358-2 at 1-2.

On January 10, 2006, Knox was transferred from Pontiac Correctional Center to Tamms. *See* Doc. 366 at 2.  After medical personnel at Tamms reviewed Knox's master file on January 12, 2006, a plan was developed to transfer Knox to Dixon on medical furlough for evaluation, diagnostic, clarification, and re-evaluation. *See* Doc. 303-1 at 3-5.  Knox was transferred from Tamms to Menard Correctional Center ("Menard") on February 2, 2006. *See* Doc. 366 at 4.  On March 29, 2006, Knox was then transferred from Menard to Dixon (*see id.*) for the purpose of a mental health evaluation and diagnostic testing, after which Knox was scheduled to return to

Tamms (*See* Doc. 303-1 at 6). While at Dixon, Dr. Wiedner and Dr. Dobier prepared a mental health evaluation report of Knox which diagnosed Knox with malingering, alcohol and cannabis dependence, antisocial personality disorder, borderline intellectual functioning, seizure disorder, and problems related to interaction with the legal system/crime. Doc. 290-1 at 5-12. On April 14, 2006, Knox was transferred back to Tamms. *See* Doc. 259-1 at 3. Thereafter, Knox was denied medical treatment for his former Axis-I diagnosis of impulse control disorder.

## PROCEDURAL HISTORY

On April 14, 2008, pro se Plaintiff Christopher Knox ("Knox"), an inmate at Tamms Correctional Center ("Tamms"), filed a complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 alleging civil rights violations against 18 named defendants. Doc. 1 at 1. The complaint originally included two other named plaintiffs who voluntarily dismissed themselves from this case. *See* Docs. 6, 7. Knox attempted to structure this case as a class action. *See* Docs. 1, 44. However, Knox's motion for class certification (Doc. 44) was ultimately denied by the Court. *See* Docs. 57, 97. The Court has also denied Knox's motion for a preliminary injunction (Doc. 20). *See* Docs. 48, 63.

Fourteen defendants have been dismissed from this case and one has yet to be served. On October 4, 2010, the Court granted summary judgment and dismissed without prejudice from the case several high-ranking Illinois Department of Corrections officials (Defendants Bartley, Walker, Montgumerory, Garnett, Hartline, Navarro, Eleya) because Knox had failed to exhaust his administrative remedies against those defendants. *See* Docs. 127, 242. Defendant Illinois Department of Corrections ("IDOC") was dismissed with prejudice from the case in a January 18, 2011 order finding that the IDOC was not a 'person' under 42 U.S.C. § 1983. *See* Doc. 315. Service is yet to be executed on Defendants Dr. David Weidner. *See* Doc. 401. Service was

recently executed on Dr. Scott. Doc. 392. Most recently, Defendants Powers, Kachigan, Chandre, Kahn, Ngu, and Scott were dismissed without prejudice on May 24, 2011. Doc. 409.

## DISCUSSION

The Court will first summarize the applicable law in this case and will then turn its discussion to the merits of the instant motions for summary judgment.

## I.    Applicable Law

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties" (*Anderson*, 477 U.S. at 247-48) or by "some metaphysical doubt as to the material facts" (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. Lastly, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

### B. **Section 1983**

Knox is proceeding in this case pursuant to 42 U.S.C. § 1983. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). In order to be personally involved, a plaintiff must demonstrate that the defendant knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (citing *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)). "They must in other words act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992-93. Thus, the doctrine of respondeat superior is not applicable in an action under § 1983. *See id*; *Gentry*, 65 F.3d at 561.

### C. **Cruel and Unusual Punishment; Conditions of Confinement**

There is no constitutional right mandating comfortable prisons. *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). However, when the conditions of a prison become inhumane, such conditions of confinement are subject to scrutiny under the Eighth Amendment. *Id*. (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement. *Id*. For example, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates'." *Id*. (citations omitted). To succeed on a conditions of confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he or she was incarcerated under conditions that posed a substantial risk of serious harm and 2) the defendant was deliberately

indifferent to that risk. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 834). To prove deliberate indifference, the plaintiff must demonstrate that each individual prison official had subjective knowledge of the risk of harm and personally disregarded it. *Id*.

### D. Cruel and Unusual Punishment; Inadequate Medical Care

The U.S. Supreme Court has interpreted the right to be free from cruel and unusual punishment imposes a duty on states to provide adequate medical care to prison inmates. *Johnson v. Snyder*, 444 F.3d at 584 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))). "Prison officials fail in this duty if they display deliberate indifference to serious medical needs of prisoners." *Id*. (internal quotations and citations omitted). In sum, a plaintiff claiming that his right to be free from cruel and unusual punishment was deprived in violation of the Eighth Amendment must demonstrate (1) an objectively serious medical condition and (2) deliberate indifference by the defendant to that condition. *Id*. (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)).

In order to be deliberately indifferent to serious medical need in a cruel and unusual punishment claim under Eighth Amendment, a plaintiff must demonstrate that a defendant "acted with a sufficiently culpable state of mind." *Johnson v. Snyder,* 444 F.3d at 585 (stating that deliberate indifference is a subjective standard and citing *Johnson v. Doughty*, 433 F.3d at 1010 and *Norfleet v. Webster*, 439 F.3d 392, 395-96 (7th Cir. 2006)). "Deliberate indifference is more than negligence and approaches intentional wrongdoing … [and] is essentially a criminal recklessness standard, that is, ignoring a known risk." *Johnson v. Snyder*, 444 F.3d at 585 (citing *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998) (citing *Farmer*, 511 U.S. at

837)).  "Even gross negligence is 'below the standard needed to impose constitutional liability.'" *Johnson v. Snyder*, 444 F.3d at 585 (quoting *Farmer*, 511 U.S at 837).

## II.    <u>Knox's Remaining Claims</u>

After three years of litigation and numerous dispositive motions, the Court finds it appropriate to identify any remaining claims in this case.  From the outset, a liberal reading of Knox's complaint would put the defendants in this case on notice of several claims.  In his complaint, Knox specifically refers to the Eighth and Fourteenth Amendments of the U.S. Constitution (Doc. 1 at 1-4, 31-32, 36), the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act") (Doc.1 at 2, 4, 33-35), the Mental Health and Disabilities Code and the State Mental Health Code (Doc. 1 at 32), and the due process clause of the Fourteenth Amendment (Doc. 1 at 32).  In its initial screening order of May 14, 2009, the Court identified the Eighth Amendment as the primary basis for Knox's claims. *See* Doc. 9 at 2.

Several of Knox's claims have been dismissed.  On April 6, 2010, the Court dismissed Knox's claims against all Defendants under the Illinois Mental Health and Disabilities Code, Americans with Disabilities Act, Rehabilitation Act of 1973, and due process clause of the Fourteenth Amendment for failing to state a claim in which relief could be granted. *See* Docs. 166, 167.  That Order did not address any claims made pursuant to the Eighth Amendment, and those claims were allowed to continue. *See id*. at 2-3.  Based on liberal and fair reading of Knox's complaint and a detailed review of the record, the Court finds that, after the April 6, 2010 Order dismissing many of Knox's claims (Docs. 166, 167), the remainder of Knox's allegations against the remaining defendants in this case are cruel and unusual punishment claims under the Eighth Amendment of the U.S. Constitution.

## A. <u>Conditions of Confinement Claim</u>

In his (Doc. 343) motion for summary judgment, Knox attempts to challenge his conditions of confinement at Tamms and claims that those conditions are designed to cause and do cause psychological damage. Knox proceeds to lift much of the text of an Order entered in the Southern District of Illinois by District Judge Murphy in July of 2010. *See Westerfer v. Snyder*, 725 F.Supp.2d 735 (S.D.Ill. 2010). Knox goes as far as to enter all 94 pages of that Order as an exhibit in support of his motion. Doc. 343-2 – 343-7. The *Westerfer* court made a ruling on the narrow issue of whether conditions at Tamms imposed atypical and significant hardship in relation to ordinary incidents or prison life under any plausible baseline and whether those inmates had liberty interest protected by procedural due process in avoiding confinement at Tamms. *See Westerfer,* 725 F.Supp.2d at 769. As already noted in Part II, *supra*, all of Knox's claims under the due process clause have been dismissed from this case. *See* Docs. 166, 167.

To the Court's bewilderment, Knox cites due process cases, briefly alludes to the Eighth Amendment, and at one point, even cites to an employment discrimination case. To the extent that Knox's (Doc. 343) motion for summary judgment is based on the cruel and unusual punishment clause of the Eighth Amendment, the Court finds that Knox has failed to demonstrate how each defendant was personally involved in setting the conditions of his confinement. As outlined in Part I.B, *supra*, Knox has the burden of establishing that a defendant was personally responsible for the deprivation of a constitutional right. *See Gentry*, 65 F.3d at 561 (citations omitted). Furthermore, as outlined in Part I.C, *supra,* Knox must prove that each individual defendant in this case had subjective knowledge of the risk of harm and personally disregarded it. *See Grieveson*, 538 F.3d at 775. In his (Doc. 343) motion, Knox fails to mention any defendant by name much more explain how they were personally involved or

deliberately indifferent to a substantial risk of serious harm. Knox does include a litany of admissions from the Defendants in this case in support of his motion but fails to explain how any particular response to those admissions is relevant to his Eighth Amendment claim.[5] Because Knox will be unable to demonstrate that any Defendant was personally responsible or deliberately indifferent, all remaining Defendants are entitled to judgment as a matter of law on this claim.

There being no issue of material fact for trial on this claim, it is **RECOMMENDED** that Knox's (Doc. 343) motion for summary judgment be **DENIED**.

## B. Conspiracy to Deny Medical Treatment Claim

The central allegation in Knox's (Doc. 350) cross-motion for summary judgment is of a conspiracy whereby all of the Defendants carried out a plan to deny him medical care. *See* Doc. 358 at 1, 4 ¶ 8-9, 8 ¶ 21-22, 19-20; *see also* Doc. 358-1 at 1-3. Summarizing this allegation, Knox alleges the Defendants all conspired to change his former diagnosis of a serious mental condition in order to make placement at Tamms appropriate and to deprive him of medications needed for his serious medical condition. *See id.* Knox further alleges that "Defendants all conspired with one another and co-defendants in the falsification of plaintiff mental health records" and "Defendants all knew that Dixon Corr. Center, mental health staff falsified plaintiff clinical notes, test scoring sheets, and the evaluation reports." Doc. 358 at 8 ¶ 21-22. Once Knox returned to Tamms from Dixon, Knox claims he was denied medical treatment based on the falsified report and diagnosis provided by Dr. Weidner and Dr. Dobier at Dixon. Doc. 358 at 7 ¶ 20. Knox argues that the reason the Defendants conspired to make his placement at Tamms

---

[5] Nonsensical motions such as Knox's (Doc. 343) motion for summary judgment are a waste of time and resources of both the Court and the parties and border on running afoul of Rule 11 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 11(b).

appropriate is because placement in a wing other than the Special Treatment Unit ("STU") at Tamms would have been inappropriate based upon his prior diagnosis of a serious mental illness. Doc. 358-1 at 2. Additionally, Knox alleges that the Defendants conspired falsify his medical records and diagnosis in order to keep him out of the STU at Tamms due to staffing issues in the STU at Tamms. *Id*. Knox argues that all of the Defendants were aware of his suicidal and self-mutilating tendencies. Doc. 358 at 9 ¶ 27.

The only evidentiary support for the conspiracy claims would come in the form of Knox's affidavit and the report that was allegedly falsified at Dixon by Dr. Weidner and Dr. Dobier. *See* Doc. 358 at 8 ¶ 21-22. With regard to Knox's affidavit (Doc. 366 at 1-10) in support of his (Doc. 350) cross-motion for summary judgment, many of the Defendants correctly point out that much of the affidavit is not based on personal knowledge and merely restates conclusory allegations. It is well established that statements of an affidavit which are not based on personal knowledge may not be considered by the Court in support of a party's argument for or against summary judgment. *See* FED. R. CIV. P. 56(c)(4); *see also Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (providing that an affidavit's inferences and opinions must be grounded in observation or other first-hand personal experience and must "not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience"). It is similarly well-established that conclusory allegations provided in an affidavit do not constitute evidence that may be considered by the Court. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). Specifically with regard to Knox's affidavit (Doc. 366 at 1-10), the Court finds paragraphs 8, 9, 12, 14, and 20-23 of that affidavit inadmissible in support of his (Doc. 350) cross-motion for summary judgment.

With regard to his conspiracy claim, Knox ultimately fails to provide evidence for an essential element of his claim. At best, Knox may be able support a plausible factual timeline for his conspiracy theory, but he fails to provide any specific evidence as to the role each Defendant played in that conspiracy and their subjective state of mind. Knox must be able to demonstrate how each Defendant subjectively "acted with a sufficiently culpable state of mind" with regard to the contours of the general conspiracy to deny him medical care. *See Farmer,* 511 U.S. at 837; *see also Johnson v. Snyder*, 444 F.3d at 585. He has not. Besides Knox's own assertions, there is no evidence any wrongdoing. As the Court has already found, bare allegations in an affidavit are not sufficient at this stage in litigation. Knox ultimately fails to meet the high burden of proof standard for a cruel and unusual punishment claim brought pursuant to 42 U.S.C. § 1983, as outlined in Parts I.B – I.D, *supra*. Because Knox will be unable to demonstrate that any Defendant acted with a sufficiently culpable state of mind, all Defendants are entitled to judgment as matter of law on this claim.

It is **RECOMMENDED** that Knox's (Doc. 350) cross-motion for summary judgment be **DENIED** with respect to his conspiracy to deny medical treatment claim under the cruel and unusual punishment clause of the Eighth Amendment of the Constitution.

## C. Claims Against Dr. Dobier

Dr. Dobier was dismissed from many of Knox's claims in this case because Knox had failed to exhaust his administrative remedies with regard to grievances filed to against her. *See* Doc. 242. Knox's remaining claim against Dr. Dobier is an Eighth Amendment claim for inadequate medical care for falsifying Knox's medical records. *See id.* Cross-motions for summary judgment (Docs. 290, 349) have been filed with regard to this remaining claim.

In Dr. Dobier's instant motion for summary judgment (Doc. 290), she argues that she is entitled to summary judgment because Knox has failed to prove that she falsified his medical records. In support of her argument, Dr. Dobier has attached a sworn declaration in which she acknowledges supervising Dr. Weidner,[6] a post-doctoral resident who prepared the report concerning Knox in this case. Doc. 290-1 at 4. Dr. Dobier acknowledges discussing Knox's testing and evaluation plan with Dr. Weidner and acknowledges reviewing Knox's test results and clinical interview notes supplied by Dr. Weidner. *Id.* Furthermore, Dr. Dobier acknowledges evaluating whether the test results and the report prepared by Dr. Weidner of Knox's mental health history and symptoms were consistent with Dr. Weidner's subjective conclusions and treatment recommendations. *Id.* Finally, Dr. Dobier denies participating in any of the tests or interviews conducted with Knox and asserts that she has no personal knowledge regarding the accuracy of any of the information recorded by Dr. Weidner in the report. *Id.*

Knox's lengthy deposition appears in the record. Doc. 290-1 at 33-70. In his deposition, Knox maintains that the report prepared by Dr. Weidner and signed by Dr. Dobier (Doc. 290-1 at 5-12, 72-79) is, in itself, evidence of falsification and offers no other evidence in support of his falsification claim other than that the report is so blatantly inaccurate that it must have been falsified. Doc. 290-1 at 40-42, 51, 58-69. Knox appears to especially take issue with the ultimate conclusion of the report, which asserted that Knox was "exaggerating his experience of psychological symptoms" and was diagnosed with "malingering, alcohol dependence with psychological dependence in a controlled environment and cannabis dependence with psychological dependence in a controlled environment." *See* Doc. 290-1 at 12, 40, 42, 49-51, 60-61, 67-68, 79. Throughout his deposition, Knox maintains that his transfer from Dixon to

---

[6] Dr. Weidner is also a named defendant in this case. *See* Part III, *infra.*

Tamms and subsequent denial of medical treatment were based on the medical conclusions of the report. *See* Doc. 290-1 at 40-42, 49, 51, 58, 61, 67-68.

In his deposition, Knox identifies several inaccuracies in the report prepared at Dixon that he alleges are evidence of falsification, which can be summarized as follows:

1. Information in the report refers to an "inmate Small" instead of Knox. Doc. 290-1 at 42, 59-60.
2. Knox's age is misstated. Doc. 290-1 at 42, 61-62.
3. Knox's medical history all the way back to his childhood is inaccurate. Doc. 290-1 at 42, 61-63-65.
4. Information related to a test or tests that Knox took is inaccurate. Doc. 290-1 at 42, 51, 59, 60.
5. The report discusses a test or tests that Knox did not take. Doc. 290-1 at 51, 60-62, 65.
6. The report incorrectly states that Knox has an alcohol and drug dependency. Doc. 290-1 at 61, 63-64, 67.
7. Information in the report referring to a segregation review is inaccurate. Doc. 290-1 at 65.
8. Information in the report referring to an automobile accident in which Knox injured his lower back is inaccurate. Doc. 290-1 at 65-66.
9. Information in the report referring to a gunshot wound in Knox's leg is inaccurate. Doc. 290-1 at 66.
10. Information in the report stating that Knox has had seizures once per month is inaccurate. Doc. 290-1 at 67.

Finally, Knox admits in his deposition that he has no other evidence with regard to his falsification claim other than the alleged inaccuracies contained in the report. Doc. 209-1 at 68-69.

In Knox's response (Doc. 348) to Dr. Dobier's motion for summary judgment (Doc. 290) and the instant cross-motion for summary judgment (Doc. 349), Knox continues to go to great lengths to argue that that much of the report prepared by Dr. Weidner and approved by Dr. Dobier is blatantly inaccurate. *See* Docs. 348, 349. Much like his affidavit filed in support of his (Doc. 350) cross-motion for summary judgment, Knox again includes statements in his affidavit in support of his (Doc. 349) cross-motion for summary judgment that are not based on personal

knowledge and are conclusory in nature. *See* Doc. 366 at 12-39. Specifically, the Court finds paragraphs 6-9, 13, 22-23, 34-36, 39-40, and 43-44 inadmissible in support of his (Doc. 349) cross-motion for summary judgment.

With his affidavit, Knox proceeds to add a new wrinkle to his case against Dr. Dobier by asserting in an affidavit (for the first time in this lawsuit) that he had informed Dr. Dobier on two occasions in April of 2006 that he believed Dr. Weidner was falsifying his medical records. *See* Doc. 366 at 26 ¶ 42. The Court recognizes the possibility that, under normal circumstances, this piece of evidence, alone, could be sufficient to create a genuine issue of material fact for trial as to whether Dr. Dobier was deliberately indifferent to the serious medical needs of Knox. However, after considering the entire record of this case, the Court finds that Knox has attempted to create a sham issue of fact with his assertion that Dr. Dobier disregarded subjective knowledge that Dr. Weidner was falsifying his medical records.

"[The Seventh Circuit has] long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *e.g.*, *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987); *Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 861 (7th Cir. 1985).; *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985)); *see also Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007). "If such contradictions were permitted, … 'the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut'." *Id.* at 1169 (citations omitted). In *Ineichen v. Ameritech*, a litigant in a racial discrimination case filed an affidavit that contradicted prior deposition testimony by

indicating that a manager had previously made a racially-charged comment towards her. *See Ineichen,* 410 F.3d at 963. The *Ineichen* court rejected this as an attempt to create a sham issue of fact to avoid summary judgment. *See id.*

Similarly to *Ineichen*, Knox attempts to contradict his prior deposition testimony with an affidavit that asserts that he made Dr. Dobier aware that he believed Dr. Weidner was falsifying his medical records. *See* Doc. 366 at 26 ¶ 42. The Court finds this assertion curious in light of other evidence in the record. During his deposition, Knox recalls his two meetings with Dr. Dobier as follows:

> Q: Have you ever met Dr. Dobier?
> A: Yes, I did.
> Q: When did you meet her?
> A: In Dixon Correctional Center.
> Q: What was the time frame that you were sent to Dixon Correctional Center?
> A: I arrived at Dixon March -- in March of '06 and I left April of '06.
> Q: Do you recall the date that you met Dr. Dobier?
> A: No. It was sometime in April.
> Q: How many times did you meet with Dr. Dobier?
> A: Twice.
> Q: What was the purpose of your meeting with her?
> A: She said they was there to evaluate me and to make an assessment of my mental illness.
> Q: Did she evaluate you?
> A: That's what she told me that was her purpose there to be for.
> Q: Did she ask you questions? Did she perform an evaluation? What did she do?
> A: Yes, she did. She asked me all kinds of questions.
> Q: What types of questions did she ask?
> A: Why was I receiving mental health treatment, what type of medication was I taking, who treated me for mental illness and all that stuff there.
> Q: She asked you questions regarding your mental health condition?
> A: That's correct.
> Q: Did you answer her questions truthfully?
> A: Yes, I did. I answered to the best that I knew how.
> Q: What did you tell Dr. Dobier about your mental health condition?
> A: I told her what I actually remember that I was -- suffered from illnesses and all that stuff. I have a history of mental illness. That's all I recall really saying to her, that I have a history.

Q:     Do you recall specifically what you told her about your mental illness?
A:     No, I do not.
Q:     So you don't remember what you told her?
A:     I don't recall exactly what I told her, but I do recall it was related to my mental illness.
Q:     Okay. But you don't remember what you told her about illnesses you had or what your symptoms were?
A:     No.
Q:     Okay. And this was on two occasions? It was the same conversation?
A:     There was two. There was two separate occasions.
Q:     Okay. Do you recall anything that she told you during those meetings?
A:     I just told you what she told me. She told me she was here to asses me and evaluate me regarding my mental health issues.
Q:     Do you have any documentation regarding your meeting with Dr. Dobier?
A:     No, I do not.
Q:     Was there anyone else present in your meeting with Dr. Dobier?
A:     No. She spoke with me at my cell front.
Q:     This was your cell in Dixon?
A:     That's correct.
Q:     When she spoke with you, it was just you and her?
A:     That's correct.

Doc. 290-1 at 58-59.

In his June 9, 2010 deposition, Knox was questioned repeatedly about any evidence that he had that Dr. Dobier falsified his medical records. *See* Doc. 290-1 at 58-69. Never did Knox indicate in his deposition that he had informed Dr. Dobier that he believed Dr. Weidner was falsifying his medical records. In fact, Knox admitted that he had no other evidence with regard to his falsification claim other than the alleged inaccuracies contained in the report. Doc. 209-1 at 68-69. Furthermore, it is unlikely that Knox would have had any knowledge or indication that Dr. Weidner was falsifying his medical records at the time of his alleged conversations with Dr. Dobier because Knox was not privy to Dr. Weidner's notes and test results at that time, and the final report was not issued until May 16, 2006. *See* Doc. 387-1 at 3 ¶ 3. Now, after some time to contemplate the arguments made in Dr. Dobier's (Doc. 290) motion for summary judgment, Knox offers testimony in the form of an affidavit that he suddenly recalls the substance of his

conversations with Dr. Dobier at Dixon, and the substance of those conversations adds support to his claim that Dr. Dobier was deliberately indifferent to his serious medical needs. *See* Doc. 366 at 26 ¶ 42. The Court finds that this assertion is intended to create a sham issue of fact and is entitled to little or no weight in light of the rest of the evidence in the record.

Finally, even considering the entire record most strictly against Dr. Dobier and liberally in favor of Knox, the Court cannot conclude the allegedly falsified report is sufficient to create a genuine issue of material fact to avoid summary judgment in this case. As outlined in Parts I.B – I.D, *supra*, the Knox has a very steep mountain to scale with regard to proving that Dr. Dobier was deliberately indifferent to Knox's serious medical needs. Even if the Court were to find that the information in the report approved and signed by Dr. Dobier was inaccurate to the extent the Knox asserts, the record is void of any admissible inculpatory evidence as to Dr. Dobier's mental state with regard to Knox. Based on the entire record before it, the Court, at most, could find that there is a genuine issue of material fact as to whether Dr. Dobier was negligent in her supervision of Dr. Weidner. However, negligence or medical malpractice do not rise to the level of deliberate indifference, as required by the Eighth Amendment. *See Johnson v. Snyder*, 444 F.3d at 585; *see also Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (finding that "[d]eliberate indifference is not medical malpractice" and citing *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)). Because Knox has failed to identify ample evidence to create a genuine issue of material fact as to whether Dr. Dobier was deliberately indifferent to his serious medical condition, the Court must conclude that there is no genuine issue of material fact with regard to Knox's remaining falsification claim against Dr. Dobier and she is entitled to judgment as a matter of law.

As such, it is **RECOMMENDED** that Defendant Dr. Dobier's (Doc. 290) motion for summary judgment be **GRANTED** and Plaintiff Christopher Knox's (Doc. 349) cross-motion for summary judgment be **DENIED**.

It is further **RECOMMENDED** that judgment be entered in favor of Dr. Dobier on at the conclusion of this case on Knox's falsification of medical records claim under the Eighth Amendment of the U.S. Constitution.

## D. Claims Against Dr. Weiner

In his complaint (Doc. 1) and his (Doc. 350) cross-motion for summary judgment, Knox complains that the medical staff at Dixon increased his medications to dangerous levels, and he began to experience the psychological effects of those medications. *See* Doc. 1 at at 24 ¶ 65; Doc. 358 at 6-7 ¶ 15-18. Knox asserts in his affidavit that he made Dr. Weiner aware that he was experiencing those psychological effects and Dr. Weiner did nothing about it after Knox repeatedly requested medical treatment and decreases in medication. Doc. 366 at 6-7 ¶ 18. In his deposition, Knox was asked more specifically about his claim against Dr. Weiner:

> Q:      ... Dr. Weiner was at Dixon as well?
> A:      Who?
> Q:      Dr. Weiner, Lawrence Weiner?
> A:      Yeah, he was. Yeah.
> Q:      And what was his job?
> A:      I don't know. I don't know his job title, but I don't know at the time -- all I know he identified himself to me as a mental health person there. And he said he was here to talk to me relating to why I was transferred to -- initially to Dixon. And he informed me that I was -- some psychological testing was to be performed on me to determine if I'm mentally ill.
> Q:      Okay. Was he a therapist?
> A:      Like I say, I didn't know what his job thing was at that time.
> Q:      Okay. So I guess, why are you suing him?
> A:      Oh, because after the test was performed -- after the test was performed, I had spoken with him again and I expressed to him I was experiencing psychological -- I was having suicidal thoughts, was harming myself. And then I told him also, too, I was seeing things that wasn't there. And then he told me flat

out, ain't nothing wrong with you. You faking. Ain't nothing wrong with you. And a few hours later, I ended up hanging myself.

...

A:      And he knew -- prior to me doing it, I told him I was having these suicidal thoughts. I told him I had plans on doing this and he ignored.

Q:      This was after Dr. Weidner said you were malingering?

A:      That's correct.

Q:      And when did this incident where Dr. Weiner was saying that there was nothing wrong with you and you tried to hang yourself?

A:      Talking about the tests?

Q:      You said that you talked to Dr. Weiner and he said that there was nothing wrong with you.

A:      Right. This happened after the tests was performed.

Doc. 290-1 at 50-51.

In his (Doc. 302) motion for summary judgment and his (Doc. 388) response to Knox's (Doc. 350) cross-motion for summary judgment, Dr. Weiner focuses more on Knox's conspiracy allegations discussed by the Court in Part II.B, *supra*. With regard to the conditions of confinement and conspiracy to deny medical treatment claims, Dr. Weiner argues that Knox will be unable to demonstrate how he acted with a sufficiently culpable state of mind and was, therefore, deliberately indifferent to Knox. *See* Doc. 303 at 6. With regard to the conspiracy claim, Dr. Weiner highlights evidence in the record that Knox was scheduled to return to Tamms no matter the outcome of the psychological testing at Tamms. Doc. 361-1. According to Dr. Weiner, this evidence demonstrates that there is no logical inference to be made that the Defendants engaged in a conspiracy deprive Knox of healthcare. Doc. 388 at 3. In any event, after considering all of the evidence in the record in favor of Knox, the Court agrees that Knox will be unable to demonstrate deliberate indifference by Dr. Weiner with regard to the conditions of confinement and conspiracy claims. *See* Parts II.A, II.B, *supra*. There being no material issue of fact for trial on Knox's Eighth Amendment conditions of confinement and conspiracy to deny

medical treatment claims with respect to Dr. Weiner, the Court finds that Dr. Weiner is entitled to judgment as a matter of law on those two claims.

Similarly, Knox's claim that Dr. Weiner was deliberately indifferent to Knox's serious medical needs when Dr. Weiner was informed by Knox about psychological effects of medication administered at Dixon and did nothing about it will not survive summary judgment. Knox provides evidence in his affidavit and deposition testimony discussed in this Part, *supra*, that Dr. Weiner disregarded his complaints regarding over-medication at Dixon. *See* Doc. 366 at 6-7 ¶ 18; Doc. 290-1 at 50-51. Dr. Weiner did not respond to this specific claim in his response (Doc. 388) to Knox's (Doc. 350) cross-motion for summary judgment, but the Court finds Dr. Weiner's affidavit (Doc. 303-1 at 6-7) in the record. In his affidavit, Dr. Weiner attests that his role at Dixon is administrative in nature, and he did not evaluate Knox or make any mental health diagnosis. Doc. 303-1 at 6.

Even construing the record most favorably for Knox and accepting all of Knox's evidence with regard to this claim as fact, the Court cannot conclude that there is an issue of material fact for trial as to whether Dr. Weiner was deliberately indifferent by disregarding Knox's complaints concerning over-medication at Dixon. Accepting Knox's version of events as true, the best Knox can prove with regard to Dr. Weiner's state of mind is that he acted negligently toward Knox. Dr. Weiner was not Knox's treating physician and did not prescribe his medications at Dixon. It could be argued that Dr. Weiner had a professional obligation to inform Knox's treating physician about Knox's complaints with regard to his medication. However, disregarding that obligation does not amount to deliberate indifference. At best, it could amount to negligence or medical malpractice, and that is not sufficient for purposes of an

Eighth Amendment claim for cruel and unusual punishment. *See Farmer,* 511 U.S. at 837; *see also Johnson v. Snyder*, 444 F.3d at 585; *Duckworth*, 532 F.3d at 679.

It is **RECOMMENDED** that Defendant Dr. Weiner's (Doc. 302) motion for summary judgment be **GRANTED**.

It is further **RECOMMENDED** that judgment be entered in favor of Dr. Weiner on all of Knox's Eighth Amendment claims at the conclusion of this case.

### E.  Claims Against Dr. Rhodes

Unlike Dr. Weiner, the only remaining claims with regard to Dr. Rhodes are Knox's conditions of confinement and conspiracy allegations. *See* Doc. 358-1 at 2-3.  With regard to Dr. Rhodes, the Court incorporates its discussion of Knox's conditions of confinement and conspiracy claims in Parts II.A, II.B, *supra,* and finds that Knox will be unable to demonstrate that Dr. Rhodes acted with a sufficiently culpable state of mind.  Most notably with regard to Dr. Rhodes, Knox does not even mention her by name in his affidavit filed in support of his (Doc. 350) cross-motion for summary judgment.  Even considering the rest of the record in a light most favorably for Knox, the Court, again, concludes that Knox will be unable produce sufficient evidence for essential elements of his claims.

It is **RECOMMENDED** that Defendant Dr. Rhode's (Doc. 305) motion for summary judgment be **GRANTED**.

It is further **RECOMMENDED** that judgment be entered in favor of Dr. Rhodes on all of Knox's Eighth Amendment claims at the conclusion of this case.

### F.  Any Remaining Claims

In his (Doc. 350) cross-motion for summary judgment, Knox brings claims against several other Defendants that have already been dismissed from this case pursuant to the Court's

Order on May 24, 2011. *See* Doc. 409. Therefore, those portions of Knox's (Doc. 350) cross-motion for summary judgment are moot. Because the Court has recommended that judgment be entered in favor of the Defendants on all the ripe claims in Knox's (Doc. 350) cross-motion for summary judgment, it is **RECOMMENDED** that Knox's (Doc. 350) cross-motion for summary judgment be **DENIED** in its entirety.

### III.  Dr. Weidner

Knox has failed to effectuate service of process on Defendant Dr. Weidner despite being repeatedly and explicitly ordered to do so. *See* Fed. R. Civ. P. 4(m). On January 26, 2011, Knox was granted another 60 days to effectuate service on Dr. Weidner. *See* Doc. 327. As of the date of this Report and Recommendation, Knox has not been able to serve Dr. Weidner. *See* Doc. 401. It is **RECOMMENDED** that Dr. Weidner be dismissed from this case without prejudice for the failure by Knox to effectuate service of process.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that:

1) Defendant Dr. Dobier's motion for summary judgment (Doc. 290) be **GRANTED**.
2) Defendant Dr. Weiner's motion for summary judgment (Doc. 302) be **GRANTED.**
3) Defendant Dr. Rhodes' motion for summary judgment (Doc. 305) be **GRANTED.**
4) Plaintiff Knox's motion for summary judgment (Doc. 343) be **DENIED.**
5) Plaintiff Knox's cross-motion for summary judgment (Doc. 349) be **DENIED.**
6) Plaintiff Knox's cross-motion for summary judgment (Doc. 350) be **DENIED.**

It is further **RECOMMENDED** that:

1) judgment be entered in favor of Dr. Dobier at the conclusion of this case on Knox's falsification of medical records claim under the Eighth Amendment of the U.S. Constitution.
2) judgment be entered in favor of Dr. Weiner on all of Knox's Eighth Amendment claims at the conclusion of this case.

3) judgment be entered in favor of Dr. Rhodes on all of Knox's Eighth Amendment claims at the conclusion of this case.
4) Dr. Weidner be dismissed from this case without prejudice for the failure by Knox to effectuate service of process.

If the recommendations are adopted by the District Judge, there will be no further issues

requiring the Court's attention in this case.

**SO RECOMMENDED.**

**DATED: <u>May 24, 2011.</u>**

<u>*/s/ Philip M. Frazier*</u>
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**